Filed 5/6/14  In re Juliana S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JULIANA S. et al., Persons Coming Under the Juvenile Court Law. | B249076 (Los Angeles County Super. Ct. No. CK98047) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JASMINE W., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Carlos E. Vasquez, Judge.  Affirmed.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kimberly A. Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

Jasmine W. (mother) appeals the jurisdiction and disposition orders in the dependency case pertaining to her children, Juliana S. (Juliana), M.C. (M.) and Tyler J. (Tyler) (collectively minors). According to mother, there was insufficient evidence that her use of marijuana placed the minors at risk of harm, and the juvenile court abused its discretion when it ordered her to participate in drug testing, drug treatment, family preservation services and counseling for drug use. We find no error and affirm.

## FACTS

### Background

Mother was born in September 1991. The Department of Children and Family Services (Department) received multiple referrals beginning in 2002 alleging that Cynthia C. (grandmother) was neglecting mother and her siblings. None of the allegations were substantiated. One of mother's siblings died in 2006. The family never disclosed the cause of death. In September 2008, mother called 911 to report Walter W. (grandfather) for domestic violence against both mother and grandmother. This time, the allegations were substantiated

From November 2008 to January 2010, a juvenile court case was opened involving mother and her siblings. During the case, mother turned 18 years old, moved out of the home with grandmother and refused to make herself available to the social worker who was handling the case.

Juliana was born in March 2009 and M. was born in June 2011. Mother tested positive for marijuana when M. was born. She did not get any prenatal care, and she smoked marijuana during her pregnancy, but she claimed that she did not know she was pregnant until after eight months. The Department received a referral alleging general neglect and got involved. Mother admitted that she smoked marijuana two weeks before M. was born. She said it was not a habit, and that she only smoked at parties. Mother refused to participate in services and drug test. The Department deemed the allegations inconclusive.

In July 2012, the Department received a referral alleging general neglect and emotional abuse of Juliana and M. by mother. A collateral contact reported that the

2

family was living in a home that smelled of marijuana on a daily basis and did not have electricity.[1]  Mother was home when the smell of marijuana was present.  Until about June 2012, mother and grandmother argued and threw things against the wall.  Juliana asked a neighbor for food almost every day.  Mother agreed to randomly drug test, and to participate in voluntary services such as counseling, drug treatment and parent training.  She was told to have food in the home and to ensure that Juliana and M. were current with immunizations and medical examinations.  The referral was substantiated and a Voluntary Family Maintenance case was opened on September 25, 2012.  Mother was a no show at subsequent drug tests and refused services.  She was hostile toward social workers and told them to take her to court.  She did not take Juliana and M. to physical and medical examinations, and when asked why, mother stated:  "I didn't want to go. This is voluntary.  Like I said, my kids is well taken care of."  A social worker urged mother to take Juliana and M. for a physical examination, and to take Juliana to the dentist.  Mother agreed.  She reported that she took them to the doctor, but she did not report that she took Juliana to the dentist.  When a social worker made an unannounced visit at the family home, mother was not home.  The next day, the Team Decision Meeting facilitator called.  Grandmother said that mother refused to speak to the facilitator or the social worker, but promised that mother would attend the Team Decision Meeting on February 11, 2013.  Mother continued not to drug test.  On the day of the Team Decision Meeting, the facilitator called the family to remind them that the meeting was at 10:00 a.m.  Mother said she did not know about it, but she also said that she would attend.  Mother failed to appear.  A social worker called to ask why and mother said she did not have a way to get there.

---

[1]  The record suggests that mother, Juliana and M. were living in grandmother's home with extended family.  According to the collateral contact, mother and grandmother were stealing her electricity with an extension cord, and she cut the cord on July 3, 2012. Mother explained to a social worker that the electricity was off for five months because the bill was connected to the trash service and was $2,000, which the family could not pay.  She claimed that during that time, a neighbor was allowing the family to use her electricity.

3

On February 15, 2013, the case was closed.

**The February 2013 Referral.**

Tyler was born in February 2013. Mother tested positive for marijuana, which led to the Department receiving a referral. Mother admitted to smoking marijuana two times a day during her pregnancy, but then claimed that she stopped three weeks before giving birth. Reportedly, she smoked to cope with the stress of being a single mother, and that she was "stressed all the time." She claimed that she did not know she was pregnant until after seven months, and therefore did not get prenatal care. In addition, she said that she had tried to get an abortion but the pregnancy was too far along.

Tyler was removed from mother.

Officers went to the family home to detain Juliana and M. but grandmother said that they were with mother's "friends."

**The Dependency Petition**

Pursuant to section 300, subdivision (b) of the Welfare and Institutions Code,[2] the Department filed a petition that alleged that mother had a history of substance abuse that rendered her incapable of providing regular care for the minors, and that they were at risk of physical harm.

**The Detention Hearing**

Over the Department's objection, the juvenile court released the minors to mother's custody. It told her to stop using marijuana, and it ordered her to submit to drug testing once a week. Finally, the juvenile court ordered mother to participate in family preservation services.

**The Jurisdiction/Disposition Report**

Mother was interviewed and said she had been smoking marijuana since she was 17 years old. She denied being addicted, or that marijuana affected her parenting, and said that she did not need treatment. According to mother, she only smoked in the garage while the minors were asleep. She tested positive for marijuana on February 23, 2013,

---

[2] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

March 8, 2013, and March 18, 2013. She was a no show for a drug test on March 6, 2013. Based on mother's noncompliance, family preservation services were terminated. Mother and the minors all slept in the same bed, which the Department advised against, telling her it posed a safety hazard. She was provided with safe sleeping and co-sleeping tips. Nonetheless, she continued to co-sleep with the minors.

**Adjudication**

The parties convened for a hearing regarding jurisdiction and disposition. The Department's counsel argued that there was a presumption pursuant to section 355.1 that the minors were dependents; case law established that a parent's use of marijuana may constitute a risk of harm because of the failure to protect against second-hand marijuana smoke; and mother exposed Tyler to marijuana in utero, which was sufficient to establish that there was a current risk of harm. Later, the Department's counsel argued that a risk of harm was established by mother's denial that she was an addict despite smoking marijuana since she was 17 years old, by her missed drug tests, and by her failure to obtain prenatal care.

The juvenile court sustained the petition and ordered the minors released to mother under the Department's supervision. The Department was ordered to provide, and mother was ordered to participate in, counseling regarding drug use, family preservation services and a full drug program with aftercare, and to submit to random or on demand drug testing.

This timely appeal followed.

## DISCUSSION

**I. Jurisdiction.**

Mother contends that there was insufficient evidence that she had a substance abuse problem and that she was unable to provide the minors with adequate care or supervision for purposes of establishing jurisdiction under section 300, subdivision (b). In the alternative, mother argues she was denied procedural due process because she was not given notice that the Department planned to rely on section 355.1, subdivision (a). These contentions lack merit.

5

When we review a juvenile court's jurisdictional findings, our task is "to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

A. *Section 300, subdivision (b).*

A child is within the juvenile court's jurisdiction and may be adjudged a dependent when, inter alia, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." (§ 300, subd. (b).)

B. *Substance Abuse.*

*In re Drake M.* (2012) 211 Cal.App.4th 754, 766 (*Drake*) established that a finding of substance abuse must be based on evidence that the parent had been diagnosed as having a current substance abuse problem by a medical professional, or that the parent has a current substance abuse problem as defined in the DSM-IV-TR.[3] Per the DSM-IV-TR, substance abuse is "'[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related

---

[3]      Diagnostic and Statistical Manual or Mental Disorders (DSM-IV-TR).

6

legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶]
(4) continued substance use despite having persistent or recurrent social or interpersonal
problems caused or exacerbated by the effects of the substance (e.g., arguments with
spouse about consequences of intoxication, physical fights).' [Citation.]" (*Drake*, *supra,*
at p. 766.)

In our view, there was sufficient evidence that mother had a substance abuse
problem under the first category of the DSM-IV-TR. For more than a 12-month period,
she demonstrated recurrent substance abuse resulting in neglect of Juliana and M.
Mother began smoking marijuana in 2008 or 2009 when she was 17 years old. In June
2011, she tested positive for marijuana when M. was born, and she refused to participate
in services and drug test. For a period of time, mother and grandmother argued and threw
things at the wall in their home. In July 2012, while mother was pregnant with Tyler, a
collateral contact reported that mother's home smelled of marijuana on a daily basis
when she was present. Mother admitted that she smoked two times a day while pregnant
with Tyler, at least until some point in late January or early February 2013. The
inference is that mother was neglectful because she exposed Juliana and M. to marijuana
smoke.[4] (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 452 [exposing children to
secondhand marijuana smoke creates a risk of harm].) Moreover, the home did not have
electricity, and Juliana asked a neighbor for food almost every day. Mother did not take
Juliana and M. for immunizations and medical examinations because she did not want to,
because she thought it was voluntary and Juliana and M. were well taken care of. In
addition, there is no indication in the record that mother took Juliana to the dentist. The
inference is that mother was not adequately providing Juliana and M. with basic
necessities. Moreover, mother did not obtain prenatal care for Tyler. Then, when she

---

[4] When she was interviewed, mother claimed that she smoked only in her garage
outside the home. At best, that evidence conflicts with the collateral contact's report that
the home smelled like marijuana on a daily basis. Under the substantial evidence rule,
we must resolve all conflicts in favor of the judgment. (*Holmes v. Lerner* (1999) 74
Cal.App.4th 442, 445; *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th
1627, 1632–1633.)

gave birth to him, she tested positive for marijuana. Finally, mother was warned by social workers that sleeping with the minors was dangerous but she continued the practice, which further placed them at risk of harm.

C. *Inability to adequately supervise or protect*.

A finding of substance abuse generally supports jurisdiction in one of two groups. "'One group involves an *identified*, *specific hazard* in the child's environment—typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety. [Citations.]' [Citation.]" (*Drake*, *supra*, 211 Cal.App.4th at pp. 766–767.) A finding of substance abuse in the second group "is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*Ibid*.)

The adjudication hearing took place on April 22, 2013. Juliana was four years old, M. was one-year old and Tyler was an infant. Because the minors were so young, mother's substance abuse was prima facie evidence that she was unable to provide the minors with regular care.

D. *Procedural due process*.

Counsel for the Department briefly referred to section 355.1 during the adjudication hearing. Mother contends that the juvenile court seized on this reference and then applied subdivision (a) of that section, which provides: "Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, that finding shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300." In mother's view, the juvenile court's reliance on section 355.1, subdivision (a) violated her right to procedural due process because that statute was not cited in the dependency petition.

8

Mother's position is problematic. The Department never argued that there was competent professional evidence establishing the presumption. More importantly, the juvenile court did not find a presumption. Rather, it stated that the petition was supported by a preponderance of the evidence, which indicates that it weighed the evidence and did not rely on section 355.1, subdivision (a). Also, the case that mother cites to support her argument, *In re A.S.* (2011) 202 Cal.App.4th 237, 242, has no application. It held that in connection with an appeal from jurisdiction and disposition findings under section 300, subdivision (b), an agency could not defend the findings by claiming that the petition was brought under both section 300, subdivision (b) and section 355.1, subdivision (a) when the latter statute was neither alleged in the petition nor argued to the juvenile court. Specifically, the court noted that the agency "has forfeited the matter by not giving the parents and the [juvenile] court notice of its reliance on section 355.1, subdivision (a)." (*In re A.S.*, *supra*, at p. 243.) Here, the Department does not defend the juvenile court's ruling based on section 355.1, subdivision (a), so forfeiture is not an issue. Regardless, it must be pointed out that the statute was raised at the adjudication hearing, so mother's counsel was given ample opportunity to argue that there was no presumption. We conclude that mother was not denied her right to procedural due process.

## II. The Disposition Orders.

Mother argues that the juvenile court abused its discretion when it ordered mother to participate in drug testing, drug treatment, family preservation services and counseling to address drug use. We disagree.

The juvenile court was required, per section 362, subdivision (c), to order services. That statutes provides: "If a child is adjudged a dependent child of the court, on the ground that the child is a person described by Section 300, and the court orders that a parent . . . shall retain custody of the child subject to the supervision of the social worker, the parents . . . shall be required to participate in child welfare services or services provided by an appropriate agency[.]" (§ 362, subd. (c).)

"'The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the [juvenile] court's finding that the

9

minor is a person described by section 300.' [Citation.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006–1007.) The juvenile court was vested with "broad discretion to determine what would best serve and protect the [minors'] interest[s] and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the [juvenile] court's determination in this regard absent a clear abuse of discretion. [Citation.]" (*Id.* at p. 1006.)

Mother contends that the juvenile court's orders were arbitrary, capricious or patently absurd (*Adoption of D.S.C.* (1979) 93 Cal.App.3d 14, 24–25) because there was no evidence she has a substance abuse problem. But, as we have already discussed in part I. of the Discussion, *ante*, there was sufficient evidence that mother meets the *Drake* test. Thus, the juvenile court acted well within its discretion when it entered an order that focused on assisting mother with eliminating substance abuse, the very condition that led to jurisdiction over the minors.

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
                    ASHMANN-GERST

We concur:


_____, J.
          CHAVEZ


_____, J.[*]
          FERNS

_____

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.